UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

ANTONIO HERNANDEZ,                          CASE NO.

      Plaintiff,

v.

UNITED STATES OF AMERICA,

      Defendant.

                                      /

## COMPLAINT

Plaintiff, ANTONIO HERNANDEZ ("Mr. Hernandez"), sues Defendant, UNITED STATES OF AMERICA ("USA") and alleges as follows:

## JURISDICTIONAL STATEMENT AND IDENTIFICATION OF PARTIES

1.      This is a claim against the USA for money damages for injuries caused by the negligence or wrongful acts or omissions by employees, agents, and servants of the Community Health of South Florida Inc ("CHI").

2.      CHI is a Federally Qualified Health Center and is a ''deemed'' community health center under the Federal Tort Claims Act (FTCA) such that, pursuant to the Federally Supported Health Centers Assistance Act of 1992, Public Law No. 102-501, 42 U.S.C. § 233(g)(k), and the amended Federally Supported Health Centers Assistance Act of 1995, Public Law No. 104-73, 42 U.S.C. § 201, the FTCA is the exclusive remedy for injuries, including death, caused by employees of a deemed community health center.

3.      Jurisdiction is based on 28 U.S. C. § 1331 [Federal Question], and pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b) and 2671, et seq.

4.        Venue is proper in the Miami Division of the Southern District of Florida pursuant to 28 U.S.C. §1391(e)(1) because, as referenced herein, the Plaintiff was treated as a patient at CHI which is located in this judicial district.

5.        The USA, by and through its "deemed" employees, agents and servants, rendered medical care to Mr. Hernandez at CHI in Homestead, Florida which is a deemed community health center under the laws the USA.

6.        Physicians, residents, fellows, social workers, nurses, employees and agents of CHI provided care and treatment to Mr. Hernandez at CHI in Homestead, Florida.

7.        Mr. Hernandez is a resident of Miami-Dade County, Florida.

## COMPLIANCE WITH CONDITIONS PRECEDENT

8.        This action has been commenced against the USA within 2 years after the right of action first accrued.   Plaintiff has complied with the requirements of 28 U.S.C. § 2401 by presenting a claim in writing to the appropriate federal agency within two years after the claim occurred.  Specifically, the claim was received by the Department of Health and Human Services in Washington, D.C., via certified mail on August 12, 2019.  The Defendant did not deny the claim within six months of the date that the notice of claim was sent.  Therefore, Plaintiff has complied with any and all conditions precedent to the maintenance of this lawsuit including 28 U.S.C. § 2401 and § 2675.

## FACTS GIVING RISE TO CAUSE OF ACTION

9.        On January 14, 2019, Mr. Hernandez stepped on a nail that went through his shoe and punctured the plantar aspect of his left foot.

10.      Due to the worsening of the pain from his injury, Mr. Hernandez presented to CHI on the very next day, January 15, 2019.

11.     The medical records from CHI are totally inadequate and are missing all the key documentation that should be found in any medical record.

12.     But from the few records and bills that CHI produced, one can see that on January 15, 2019 Mr. Hernandez did present to CHI.

13.     Mr. Hernandez was seen by ARNP Tariku Menberu.

14.     The ARNP wrote three prescriptions on January 15, 2019 and Mr. Hernandez was billed for a 30 minute new patient appointment.

15.     Two prescriptions were for the acute injury to his foot, and one was to start to try and control his high blood pressure.

16.     Prescriptions records show that Mr. Hernandez filled these prescriptions the following day and the ordering provider was ARNP Menberu.

17.     However, the medical records are lacking a single progress note, physical examination, impression, plan, diagnosis, vitals taken, recommendations or any history of illness for this visit.

18.     Apparently on January 18 or January 19 of 2019, Mr. Hernandez presented to the Everglades location for CHI for a follow-up lab visit for blood work.

19.     It is unclear why the blood results took six days to be reported.

20.     The medical code used for this blood work was an acute hypertension code.

21.     This again shows that nobody was focusing on the acute trauma to his foot and a possible infection.

22.     Once the blood levels came back, they confirmed a Neutrophilic Leukocytosis, which is due to an acute infection from the nail.

23.     However, at that time it was too late, and Mr. Hernandez had already been admitted to Kendall Regional Medical Center with gangrene to his foot.

24.     At no time did CHI order any x-rays, MRI's, cultures, or an ER/urgent care referral.

25.     In fact, nothing is documented as to CHI's plan of care for Mr. Hernandez.

26.     On January 21, 2019, Mr. Hernandez took himself to Kendall Regional Medical Center because his foot was becoming red, swollen and warm.

27.     The Kendall Regional Emergency Room immediately diagnosed Mr. Hernandez with acute cellulites from a recent puncture wound and now possible gangrene because of the delay.

28.     Kendall Regional immediately admitted Mr. Hernandez and tried to save his leg by performing debridements of non-viable tissue and an amputation of his first metatarsal.

29.     Kendall Regional also placed Mr. Hernandez on aggressive antibiotics.

30.     However, due to the lengthy delay caused by CHI, Kendall Regional was not able to control this bone eating infection.

31.     On January 31, 2019, Mr. Hernandez underwent a left below knee amputation.

32.     He remained hospitalized at Kendall Regional until February 11, 2019.

## COUNT I

## NEGLIGENCE AGAINST DEFENDANT UNITED STATES OF AMERICA

33.     Plaintiff adopts and re-alleges paragraphs 1 through 32 above and further allege the following:

34.     The USA, by and through its "deemed" employees, agents, and servants, in providing medical, care and treatment to Mr. Hernandez at CHI, had and undertook the duty to provide medical care and services in accordance with that level of care and skill which is

recognized as acceptable and appropriate by reasonably prudent, similar heath care providers in the same or similar community.

35.     Notwithstanding this duty, the USA, by and through its "deemed" employees, agents and servants, breached its duties in one or more of the following ways:

        a.     Failed to make a timely diagnosis of an acute infection;

        b.     Failed to provide appropriate follow-up instructions;

        c.     Failed to order an x-ray or MRI;

        d.     Failed to order a referral to an ER or urgent care center; and

        e.     Failed to document their care and treatment.

36.     As a direct and proximate result of the negligence of the USA, by and through its "deemed" employees, agents, servants and representatives, Mr. Hernandez sustained a  amputation to his left leg, suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, psychological injury, scarring, embarrassment, humiliation, loss of capacity for the enjoyment of life, expense for hospitalization, medical and nursing care and treatment, loss of past and future earning capacity, loss of ability to earn money and/or aggravation of a previously existing condition.  The losses are permanent in nature and are continuing and Plaintiff will suffer loss and impairment in the future.

WHEREFORE, Mr. Hernandez demands judgment for compensatory and economic damages against the USA together with all costs, interest as provided by law, and such other and further relief as the Court deems proper.

## COUNT II
## VICARIOUS LIABILITY OF THE DEFENDANT,
## UNITED STATES OF AMERICA FOR THE NEGLIGENCE OF ANY HEALTH
## CARE PROVIDER RENDERING CARE AND TREATMENT TO
## ANTONIO HERNANDEZ AT CHI

37.     The Plaintiff re-alleges and reaffirms all of the allegations contained in paragraphs 1 through 36 above and further alleges the following:

38.     Any and all physicians, nurses, residents, fellows, technicians and healthcare providers who participated in the care and treatment of Mr. Hernandez at CHI were actual agents of CHI and at all times material hereto, were acting within their scope of their agency relationships with CHI.

39.     CHI held out all physicians, residents, fellows, nurses, technicians and healthcare providers who participated in the care and treatment of Mr. Hernandez, as its agents, never informing Mr. Hernandez otherwise and never informing him that the United States of America and/or CHI took no responsibility for the actions of physicians, nurses, technicians and healthcare providers at CHI.

40.     Mr. Hernandez accepted treatment from physicians, nurses, technicians and healthcare providers at CHI, believing that such treatment was provided by CHI.

41.     CHI entered into an implied contract with Mr. Hernandez for the delivery of healthcare services in accordance with the accepted standard of care when he received any all treatment at CHI.  The USA's Hospital's duty to provide non-negligent care was non-delegable, and CHI undertook to deliver the necessary medical care through physicians, nurses and other healthcare providers at these facilities.

42.     The USA is liable, therefore, for the negligence of physicians, residents, fellows, nurses, technicians and healthcare providers at CHI who provided care to Mr. Hernandez as alleged in Count I.

43.     As a direct and proximate result of the negligence of the USA, by and through its "deemed" employees, agents, servants and representatives, there was a delay in the diagnosis and treatment of Mr. Hernandez, which led to the amputation of his left leg below the knee, causing bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, psychological injury, scarring, , embarrassment, humiliation, loss of capacity for the enjoyment of life, expense for hospitalization, medical and nursing care and treatment, loss of past and future earning capacity, loss of ability to earn money and/or aggravation of a previously existing condition.  The losses are permanent in nature and are continuing and Plaintiff will suffer loss and impairment in the future.

WHEREFORE, Mr. Hernandez demands judgment for compensatory and economic damages against the USA together with all costs, interest as provided by law, and such other and further relief as the Court deems proper.

**RUSSOMANNO & BORRELLO, P.A.**

- 8 –

Dated: May 5, 2020

Respectfully submitted,

RUSSOMANNO & BORRELLO, P.A.
*Counsel for Plaintiff*
Museum Tower – Penthouse 2800
150 West Flagler Street
Miami, Florida 33130
Telephone: (305) 373-2101
Facsimile: (305) 373-2103

By:    /s/ Herman J. Russomanno
        Herman J. Russomanno
        Fla. Bar No. 240346
        hrussomanno@russomanno.com
        Robert J. Borrello
        Fla. Bar No. 764485
        rborrello@russomanno.com
        Herman J. Russomanno III
        Fla. Bar No. 21249
        herman2@russomanno.com
        Christopher S. Russomanno
        Fla. Bar No. 14657
        chris@russomanno.com